UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SUSAN H. BALL  Plaintiff,  v.  STANDARD INSURANCE COMPANY and GROUP LONG TERM DISABILITY INSURANCE POLICY  Defendants. | Case No. 09 C 3668  Magistrate Judge Arlander Keys |

**MEMORANDUM OPINION AND ORDER**

Ms. Susan H. Ball brought the instant litigation against Standard Insurance Company and Group Long Term Disability Insurance Policy (collectively "Standard") after her claim for long-term disability benefits was denied. She seeks review of that decision pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.S. §§ 1001, *et seq*. Currently pending before the Court is Plaintiff's Motion to Stay Discovery and for Declaration of the Standard of Review Based on New Authority. In her motion, Ms. Ball argues that ILL. ADMIN. CODE tit. 50, § 2001.3 (2005) governs the disability insurance policy at issue. As such, the regulation's prohibition of discretionary clauses requires that the plan administrator's decision to deny her benefits be reviewed under a *de novo*, as opposed to arbitrary and capricious, standard. The Court must, therefore, decide whether the rule is valid or preempted by ERISA. Additionally,

in order to resolve a distinct but closely related issue - Ms. Ball's entitlement to discovery beyond the administrative record - she submitted Plaintiff's Motion to Reconsider and Vacate the Order Limiting Review to the Administrative Record and Striking Plaintiff's Discovery Requests. For the following reasons, Plaintiff's motion for a declaration of the standard of review is granted. Her motion to reconsider is denied.

## Background

The Court presumes familiarity with the facts of this case and, therefore, chooses not to outline them again here. *See Ball v. Standard. Ins. Co.*, No. 09 C 3668, 2010 WL 2024082, at *1-7 (N.D. Ill. May 17, 2010). Rather, the procedural posture of the case relevant to the motions currently pending will be recounted.

On May 26, 2010, Plaintiff filed a motion requesting that the Court reconsider its ruling striking her requests for discovery and limiting review of her denial of benefits to the administrative record. While she conceded that the plan at issue granted Standard discretionary authority to make determinations regarding benefits, and thus, the appropriate standard of review is deferential (arbitrary and capricious), she argued that the case relied on by the Court, *Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805 (7th Cir. 2006), was no longer good law in this circuit. Her motion was spurred, at least in part, by a ruling issued just three days after this Court's opinion. *See Baxter v.*

*Sun Life Assurance Co. of Canada*, 713 F. Supp. 2d 766 (N.D. Ill. 2010). Because Plaintiff's initial discovery requests were broad and all encompassing, she was given leave shortly after the filing of said motion, to submit narrowed requests without any guarantee that they would be permitted. Before the requests were resubmitted and before the Court had occasion to rule on her motion, Plaintiff, in response to a bulletin released by the Illinois Department of Insurance, filed another motion, this time requesting a declaration of the appropriate standard of review in this case.

## Discussion

Two motions are pending before the Court. One concerns the appropriate standard of review; the other relates to whether an earlier ruling by the Seventh Circuit remains sound. Both motions seek, either directly or indirectly, a determination regarding Plaintiff's entitlement to discovery beyond the administrative record. Each will be addressed in turn.

**A. ILL. ADMIN. CODE tit. 50, § 2001.3**

Ms. Ball maintains that the appropriate standard of review in this case is *de novo*. "The standard of judicial review in civil actions under 29 U.S.C. § 1132(a)(1)(B) depends upon the discretion granted to the plan administrator in the plan documents." *Semien*, 436 F.3d at 810 (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 103 L.

3

Ed. 2d 80 (1989)). Generally, the denial of benefits under an ERISA employee benefits plan is reviewed "under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire*, 489 U.S. at 115. In such a case, the standard of review is the more deferential arbitrary and capricious standard. *Semien*, 436 F.3d at 810 (quoting *Perugini-Christen v. Homestead Mortg. Co*, 287 F.3d 624, 626 (7th Cir. 2002)). All parties agree that the long-term disability insurance policy at issue contains language which purports to grant such authority. Plaintiff steadfastly maintains, however, that the plan's grant of discretionary authority violates Illinois law.

The law on which Plaintiff relies provides:

> No policy, contract, certificate, endorsement, rider application or agreement offered or issued in this State, by a health carrier, to provide, deliver, arrange for, pay for or reimburse any of the costs of health care services or of a disability may contain a provision purporting to reserve discretion to the health carrier to interpret the terms of the contract, or to provide standards of interpretation or review that are inconsistent with the laws of this State.

ILL. ADMIN. CODE tit. 50, § 2001.3.[1] Because § 2001.3 invalidates

---

[1] On June 28, 2010, the Director of Insurance issued Company Bulletin 2010-05, stating that "[t]he regulation prohibiting discretionary clauses is . . . applicable to all currently issued and outstanding accident, health, and disability insurance policies in that all such policies will have either been issued or renewed since the effective date of the regulation." Plaintiff's motion followed.

4

the plan's grant of authority, Plaintiff argues, the Court should conduct a *de novo* review.

Defendants respond that § 2001 is preempted by ERISA - both because the regulation falls under ERISA's express preemption clause and because it conflicts with ERISA's purpose. They also contend that the plain meaning of the rule reveals that it deals not with a plan administrator's ability to make disability determinations but, rather, the administrator's authority to interpret a contract.

### 1. **ERISA**

ERISA regulates employee welfare benefit plans that provide, *inter alia*, benefits in the event of disability, through the purchase of insurance. 29 U.S.C. § 1002(1). It allows a participant to bring a civil action "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Because "[t]he purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans," it "includes expansive pre-emption provisions which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208, 124 S. Ct. 2488, 159 L. Ed. 2d 312 (2004) (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523,

68 L. Ed. 2d 402, 101 S. Ct. 1895 (1981)(internal citations omitted)). ERISA provides for two types of preemption: express preemption under ERISA § 514, 29 U.S.C. § 1144 and conflict preemption under ERISA § 502, 29 U.S.C. § 1132.

### a. Express Preemption

Defendants argue that § 2001 is expressly preempted by ERISA.

Generally, ERISA supersedes any and all state statutes that "relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a). State laws which "regulate[] insurance, banking, or securities," however, may be saved from preemption by ERISA's savings clause. 29 U.S.C. § 1144(b)(2)(A). Because there is no dispute that the rule regulates neither banking nor securities, it will fall within the scope of the savings clause only if it regulates insurance.

In *Kentucky Association of Health Plans, Inc. v. Miller*, 538 U.S. 329, 341-42, 123 S. Ct. 1471, 155 L. Ed. 2d 468 (2003), the Supreme Court clarified the test used to determine whether a state law regulates insurance and, thus, escapes preemption. "First, the state law must be specifically directed toward entities engaged in insurance." *Id.* (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 50, 107 S. Ct. 1549, 95 L. Ed. 2d 39 (1987); *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 366, 122 S. Ct. 2151, 153 L. Ed. 2d 375 (2002)). Additionally, it

"must substantially affect the risk pooling arrangement between the insurer and the insured." *Id*.

Because the parties agree that the regulation relates to an employee benefit plan, the Court must determine whether the savings clause saves the Illinois law from preemption.

To satisfy the first prong of the *Miller* test, the regulation at issue must be more than just a "law[] of general application that [has] some bearing on insurers . . . ." 538 U.S. at 334. Rather, a rule is directed toward entities engaged in insurance if it regulates insurers "with respect to their insurance practices." *Id.* (quoting *Rush Prudential HMO*, 536 U.S. at 366).

Defendants contend that § 2001.3 is not specifically directed toward entities engaged in insurance. The Court, however, disagrees and finds that the rule undeniably satisfies the first prong of the *Miller* test in that it does, indeed, regulate insurance companies with respect to their insurance practices. Specifically, the regulation controls what insurers can and cannot include in their insurance policies.

In making this determination, the Court finds particularly instructive, the hypothetical provided by the Supreme Court when addressing the matter in *Miller*:

> Suppose a state law required all licensed attorneys to participate in 10 hours of continuing legal education (CLE) each year. This statute 'regulates' the practice of law – even though sitting through 10 hours of CLE

7

> classes does not constitute the practice of law – because the state has *conditioned* the right to practice law on certain requirements, which substantially affect the product delivered by lawyers to their clients.

538 U.S. at 337-38.

Similarly, § 2001.3 requires that those that wish to provide insurance in Illinois refrain from including discretionary clauses in their policies. Their right to do so is conditioned on this requisite.

Defendants' contention that the rule fails to satisfy the first element because its purpose is to dictate the standard of review applied by federal courts in ERISA benefits cases is similarly unavailing. While this may be one consequence of the regulation, this alone does not alter its nature. Nor does Defendants' implicit argument that the regulation affects entities outside the insurance industry – federal courts – fare any better. To be sure, the Supreme Court has declined to find that the effects of state laws on third parties are inconsistent with the requirement that the regulations be directed toward entities engaged in insurance. *See Kentucky Ass'n*, 538 U.S. at 335-36.

Defendants also maintain that the law cannot possibly be directed at the insurance industry because "the concept of judicial deference does not exist in Illinois insurance law" but is, instead, "a unique construct of ERISA, inspired by trust law." The argument, however, is misguided. Judicial deference

is mentioned not once in the actual regulation and, as discussed *supra*, the fact that the standard of judicial review may change as a result of the statute is only a consequence. But this is not the proper inquiry. Nor is it appropriate to consider, at least at this stage of the analysis, the motive of the Illinois Insurance Director in promulgating the rule.[2] Rather, a determination must be made as to whether the actual terms of the state law are directed toward an insurer and its insurance practices. It is clear that the directive prohibiting the inclusion of certain provisions by an insurance company in insurance contracts satisfies the condition.

The Court's finding is consistent not only with the precedent of this circuit but that of others as well. *See, e.g., Standard Ins. Co. v. Morrison*, 584 F.3d 837, 842 (9th Cir. 2009); *Am. Council of Life Insurers v. Ross*, 558 F.3d 600, 606 (6th Cir. 2009); *Haines v. Reliance Standard Life Ins. Co.*, No. 09 C 7648, 2010 U.S. Dist. LEXIS 104625, at *6 (N.D. Ill. Sept. 9, 2010); *McClenahan v. Metro. Life Ins. Co.*, 621 F. Supp. 2d 1135, 1140

---

[2] In arguing that the Illinois Insurance Director sought, by § 2001.3, to regulate the standard of judicial review applied to ERISA plans, Defendants cite to 29 Ill. Reg. 10173 which provides, "The legal effect of discretionary clauses is to change the standard for judicial review of benefit determinations from one of reasonableness to arbitrary and capricious. By prohibiting such clauses, [§ 2001.3] aid[s] the consumer by ensuring that benefit determinations are made under the reasonableness standard."

(D. Colo. 2009). Because the rule places conditions on an insurer's right to provide insurance in Illinois, the Court finds that this element is satisfied.

The second requirement is met if the state law substantially affects the risk pooling arrangement between the insurer and insured - it need not "actually spread risk." *Kentucky Ass'n*, 538 U.S. at 339 n.3. This requirement ensures that the regulation is directed at insurance practices as opposed to insurance companies. *See id.*

Defendants argue that § 2001.3 cannot possibly impact the risk pooling arrangement as the provision "affects the standard of judicial review applied by federal courts *at the time of judgment*, which is after risk pooling has occurred." For support, Defendants rely on the definition of risk pooling provided in *Lucero v. Hartford Life & Accident Ins. Co.*, No. 2:08-CV-302 TS, 2009 WL 2170048 (D. Utah July 17, 2009):

> The nature of insurance is to provide a hedge against risk. . . . Some individuals face higher risks of certain adverse events, and others face much lower risks. Risk pooling is the term used to describe the means by which insurers cover individuals of all risk levels across a variety of adverse event probabilities. By risk pooling, an insurer is able to spread the risk that it will have to expend its resources to compensate a particular victim of an adverse event over all those paying premiums.

The Court is not convinced.

Initially, the Court notes that, when clarifying the bipartite savings clause test, the Supreme Court declined to set

forth a timing limitation. *See Kentucky Ass'n*, 538 U.S. at 338-39.

Nor has timing factored into the Court's decisions when evaluating whether various state laws satisfied the risk pooling requirement. *See id.* Instead, the Supreme Court found dispositive, whether the state law "alters the scope of permissible bargains between insurers and insureds." *Id.* The Court finds that § 2001.3 substantially affects risk pooling between insurers and insureds by doing just that.

The Court is also not persuaded by Defendants' contention that the regulation at issue will have an affect only after risk pooling has occurred. Indeed, Defendants' briefs are littered with assertions that § 2001.3 will result in increased litigation costs. And there also exists the possibility that a greater number of claims will be paid if the plan administrator no longer has discretionary authority. These potential consequences will undoubtedly be contemplated by insurers long before individual cases make it to federal court. Because these considerations will likely be factored into insurance premiums, § 2001.3 "substantially affect[s] the type of risk pooling arrangements that insurers may offer." *Id.* at 339.

And Defendants' characterization of the law's impact notwithstanding, the Court finds the Sixth Circuit's analysis in *American Council of Life Insurers*, 558 F.3d 600, persuasive. In

*Ross*, the court dealt with provisions similar to that at issue in the case at bar and found that "the rules directly control the terms of insurance contracts by prohibiting insurers and insureds from entering into contracts that include discretionary clauses and prohibiting enforcement of such clauses." 558 F.3d at 606-07. Analogizing to the notice-prejudice statute at issue in *UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 119 S. Ct. 1380, 143 L. Ed. 2d 462 (1999), the *Ross* court held that "by changing the terms of enforceable insurance contracts, the Commissioner has 'alter[ed] the scope of permissible bargains between insurers and insureds.'" *Ross*, 558 F.3d at 606-07. Additionally, the court ruled that the statutes at issue satisfy the risk pooling arrangement because "[p]rohibiting plan administrators from exercising discretionary authority to determine benefit eligibility or to construe ambiguous terms of a plan] dictates to the insurance company the conditions under which it must pay for the risk it has assumed." *Ross* 558 F. 3d at 607 (quoting *Miller*, 538 U.S. at 339 n.3.)

Section 2001.3 substantially affects the risk-pooling arrangement between insurers and insureds. Consequently, the regulation falls within the scope of the savings clause.

    **b.   Conflict Preemption**

Defendants steadfastly maintain that the Illinois rule is preempted because it conflicts with ERISA's objective of ensuring

a uniform set of rules for decided cases under ERISA. The entire purpose of the statute, Defendants contend, is to control judicial review in ERISA litigation.

Under conflict preemption, a state law may be preempted "to the extent that it actually conflicts with federal law." *English v. Gen. Elect. Co.*, 496 U.S. 72, 79, 110 S. Ct. 2270, 110 L. Ed. 2d 65 (1990). Specifically, preemption occurs where the regulation "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S. Sct. 339, 85 L. Ed. 581 (1941).

Defendants argue that "Section 2001.3 poses an obstacle to the objectives of Congress." The Court does not agree. As an initial matter, the Court notes that ERISA itself is silent regarding the standard of review. *See Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 372, 122 S. Ct. 2151, 153 L. Ed. 2d 375 (2002). And because the *de novo* standard is already the default standard of review, it seems unlikely that the Illinois law, which mandates such a review, conflicts with ERISA. Further, this Court, as did the court in *Ross*, finds the Supreme Court's rejection of a similar argument in *Rush Prudential* to be convincing. *See Ross*, 558 F.3d at 608. In that case, the Court found that a state law which required benefit denials to be subject to a *de novo* review, was not inconsistent with ERISA.

*Rush Prudential*, 536 U.S. at 384. In its analysis, the Court stated that ERISA does not require a particular standard of review for reviewing denials of benefits. *Id.* at 385. It only required, the Court found, that "(1) the plan grant a 'beneficiary some mechanism for internal review of a benefit denial;' (2) the plan 'provide a right to a subsequent judicial forum for a claim to recover benefits;' and (3) that the standard of judicial review not conflict with anything in the text of ERISA." *Ross*, 558 F. 3d at 608-09 (quoting *Rush Prudential*, 536 U.S. at 385. The Court interpreted the last element to require "a uniform judicial regime of categories for relief and standard of primary conduct, not a uniformly lenient regime of reviewing benefit determinations." *Id.* "Nor is there any conflict in the removal of fiduciary 'discretion'; . . . ERISA does not require that such decisions be discretionary, and insurance regulation is not preempted merely because it conflicts with substantive plan terms." *Id.* at n.16 (citing *Ward*, 526 U.S. at 376).

Defendants maintain that the Supreme Court's pronouncement of the importance of deferential review in a recent case, *Conkright v. Frommert*, 130 S. Ct. 1640, 176 L. Ed. 2d 469 (2010), requires that the Court find that the Illinois statute is preempted. But *Conkright* did not deal with the issues currently before the Court and failed to overrule the Court's previous holdings discussed *infra*. Therefore, the Court's language in

14

*Conkright*, is not sufficient to alter the Court's precedent on this issue.

Thus, the Court finds that § 2001.3 is not preempted by § 502 of ERISA.

## 2. Contract Interpretation

Defendants argue that the regulation prohibits the plan administrator from interpreting the terms of the contract, not from making medical and vocational determinations. This argument is not well-taken.

In *Firestone Tire & Rubber Co. v. Bruch*, the Supreme Court did not draw the distinction that Defendants advocate for here. 489 U.S. 101, 1098 S. Ct. 948, 10 L. Ed. 2d 80 (1989). Instead, it held

> [t]he validity of a claim to benefits under an ERISA plan is likely to turn on the interpretation of terms in the plan at issue. Consistent with established principles of trust law, we hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.

489 U.S. at 115.

Additionally, the Court finds persuasive, Plaintiff's reliance on the NAIC Discretionary Clauses Model Act, which states that a discretionary clause is a "provision purporting to reserve discretion to the insurer to interpret the terms of the contract, or to provide standards of interpretation or review that are inconsistent with the laws of this state." 1 NAIC *Model*

*Laws, Regulations and Guidelines*, 42-1 to 42-6 (2002, amended 2004).

Thus, the Court finds that the provision relates to the plan administrator's authority to make benefit determinations.

**B.     The *Semien Decision***

Because the Court relied heavily on the *Semien* decision in its May 17, 2010 decision, Plaintiff asks the Court to reconsider its ruling. The sole basis of her motion is that an opinion which found that the case was no longer sound, was issued shortly after that of this Court.

Courts generally address motions challenging the merits of an order or judgment pursuant to Rules 59(e) or 60(b) of the Federal Rules of Civil Procedure. "'[A] motion to reconsider should be . . . rare,' used primarily to correct serious errors of law or to present newly discovered evidence." *Curry v. Chaeau del Mar, Inc.*, 2008 U.S. Dist. LEXIS 103137, at *1 (N.D. Ill. Dec. 22, 2008)(quoting *Bank of Waunakee v. Rochester Chesse Sales, Inc.*, 906 F.3d 1185, 1191 (7th Cir. 1990)(noting that a motion for reconsideration warrants serious consideration only if "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.") The Seventh Circuit has confirmed that a motion to reconsider does not present a litigant with an opportunity "to

relitigate a motion it already had a chance to contest and lost." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 252 (7th Cir. 1987)("'Motions for reconsideration serve a limited function; to correct manifest errors of law or fact or to present newly discovered evidence.'") Because none of the required conditions exist, the Court can dispose of Plaintiff's motion in short order.

First, while the Court is aware of the opinion on which Plaintiff relies, it notes that the opinions of district courts do not have precedential authority. *Matheny v. United States*, 469 F.3d 1093, 1097 (7th Cir. 2006). Additionally, in spite of the case on which Plaintiff relies, this Court, in *Allen v. HSBC - N. Am. (U.S.) Ret. Income Plan*, No. 09 CV 5713, 2010 U.S. Dist. LEXIS 88065, at *9 (N.D. Ill. Aug. 24, 2010), found that *Semien* remains sound.

Consequently, because Plaintiff failed to allege sufficient grounds to grant her motion, it is denied.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for a declaration of the standard of review is granted. Her motion to reconsider is denied.

Date: February 23, 2011

E N T E R E D:

*[signature: Arlander Keys]*
MAGISTRATE JUDGE ARLANDER KEYS
UNITED STATES DISTRICT COURT